Affirmed and Memorandum Opinion filed January 8, 2009








Affirmed and Memorandum Opinion filed January 8, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00871-CR

NO. 14-07-00872-CR

____________

 

DERRICK JEROD LANE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause Nos. 1033313
& 1033314

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant Derrick Jerod Lane guilty of two
offenses of aggravated sexual assault of a child, and the trial court sentenced
him to twenty-five years= confinement in the Texas Department of
Criminal Justice, Institutional Division, for each offense.  The trial court
ordered the sentences to run concurrently.  In one issue, appellant contends
that the evidence is factually insufficient to support the jury=s verdicts.  We affirm.








I.        Factual
Background

The complainant, D.A., is appellant=s daughter. 
Although D.A.=s parents dated for several years, they never married,
and after they broke up, D.A. lived with her mother and saw her father on
weekends.  In early June of 2005, when D.A. was eight years old, appellant took
D.A. to a pool party at the apartment complex of a family friend, Niki Landry. 
After the party, D.A., appellant, and others went to Niki=s apartment. 
There, after eating hot dogs and taking a bath, D.A. watched television in the
living room with her cousin and some other children.  Appellant and Niki=s boyfriend left
the apartment,[1]
and D.A. fell asleep on the couch.

When appellant returned some time around 2:00 a.m., he took
D.A. into the Aflex space,@ another room in
the apartment, where they went to sleep on a couch.  No one other than
appellant was in the room with D.A.  D.A. fell asleep on the couch, but later
got up to use the restroom.  At some point after D.A. returned from the
restroom, appellant pulled her pants down to her ankles and then pulled down
her underwear.  D.A. pulled her clothes back up, but appellant pulled them down
again and Astuck his penis in [her] behind.@  D.A. could feel
appellant moving his Aprivate@ around. 
Appellant also licked her Aprivate part@ and her chest,
and inserted his finger in her Afront side@ Aprivate part.@  During the time
these things were happening, appellant and D.A. were under some covers, and no
one else came into the room.  After the assault, appellant told D.A. that he
would Ado something@ to D.A.=s mother if she
told anyone about it.








The next day, at a family gathering at appellant=s aunt=s home, D.A. told
her aunt Devina Lane, appellant=s sister, what happened.  D.A. told Devina
that appellant had touched her Ain a private area@ and that D.A.=s mother had told
D.A. that if anyone touches her in a private area, that is Arape.@  D.A. also told
Devina that Aher dad put his private area B B tried to put his
private area on her private area.@  D.A. said that
it hurt, so she went to the bathroom, and when she came back she was crying,
and appellant told her to Astop acting like a baby.@  Later, D.A. told
Devina that appellant Alicked her on the chest and the private
area.@  Devina advised
some other family members of these allegations, and when they confronted
appellant, he denied having assaulted his daughter.  Devina and several other
female family members took D.A. to Texas Children=s Hospital, and
appellant=s mother reported D.A.=s allegations to
the police. 

Officer Terry Joseph, a deputy with the Harris County
Sheriff=s Office, met with
D.A. and her family at the hospital.  D.A. told Officer Joseph that her father,
appellant, had assaulted her within the previous twenty-four hours. 
Specifically, D.A. told Joseph that appellant had licked her vagina and placed his
penis and finger inside her vagina.  Joseph made a report and then referred the
information to a detective with the sex crimes unit. 

Dr. Mark Ward, a pediatrician at Texas Children=s Hospital,
examined D.A. after she was interviewed by a social worker and a sexual assault
nurse examiner.[2] 
From the medical records, he observed a transection, or split, of the hymen at
the 8:00 o=clock position, with no bleeding, and redness at the
6:00 o=clock position. 
He also noted that the external exam of the anus was normal.  Dr. Ward
testified that the transection and redness were consistent with the details
D.A. had given the social worker and nurse before he examined her. 

II.       Analysis
of Appellant=s Issue








Appellant contends the jury=s verdicts were
manifestly unjust for the following reasons:  (1) D.A.=s testimony is suspect
because her descriptions of the alleged offenses were contradictory; (2) the
police investigation was inadequate; (3) appellant=s prior trial
resulted in a mistrial; (4) the physical evidence was conflicting or lacking
and the attending physician stated that the physical evidence did not support
D.A.=s allegations; and
(5) the proximity of many other people in the apartment at the time of the
alleged offenses makes D.A.=s version of events unlikely at best.  We
address these arguments below.

A.      Standard of
Review

A factual sufficiency review begins with the presumption
that the evidence is legally sufficient.  Conner v. State, 67 S.W.3d 192,
198 (Tex. Crim. App. 2001); Perez v. State, 113 S.W.3d 819, 836 (Tex.
App.CAustin 2003, pet.
ref=d), overruled
on other grounds by Taylor v. State, 268 S.W.3d 571 (Tex. Crim. App.
2008).  When conducting a factual sufficiency review, we view all of the
evidence in a neutral light.  Garza v. State, 213 S.W.3d 338, 344 (Tex.
Crim. App. 2007).  We may set the verdict aside if (1) the evidence is so weak
that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is
against the great weight and preponderance of the evidence.  Watson v. State,
204 S.W.3d 404, 414B15 (Tex. Crim. App. 2006).  However, while
we may disagree with the jury=s conclusions, we must exercise
appropriate deference to avoid substituting our judgment for that of the jury,
particularly in matters of credibility.  Drichas v. State, 175 S.W.3d
795, 799 (Tex. Crim. App. 2005).  We may not simply substitute our judgment for
that of the fact finder.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
Finally, we must discuss the evidence that, according to appellant, most
undermines the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.      The
Evidence is Factually Sufficient to Support the Jury=s Verdicts

1.       The
evidence of the descriptions of the offenses is not so contradictory that it
renders the jury=s verdicts manifestly unjust. 








Appellant was charged with committing two offenses of
aggravated sexual assault of a child.  See Tex. Penal Code Ann. '
22.021(a)(1)(B)(iii), (a)(2)(B) (Vernon Supp. 2008).  The indictment in cause
number 1033313 alleges that appellant committed an offense by intentionally and
knowingly causing D.A.=s sexual organ to contact his mouth.  The
indictment in cause number 1033314 alleges that appellant committed an offense
by intentionally and knowingly causing D.A.=s sexual organ to
contact his sexual organ.








Appellant first contends that contradictory testimony
concerning the descriptions of the alleged offenses renders the evidence too
weak to support the verdicts.  Appellant points to the testimony of Devina Lane
and D.A., which he contends implicate at least nine different offenses.[3] 
Appellant further points to instances in which he contends defense counsel
impeached D.A. with prior statements and testimony from appellant=s previous trial.[4] 
According to appellant, it would have been difficult, if not impossible, for
the jury to properly evaluate all of these contradictory allegations when
determining whether appellant committed the offenses actually alleged.  So
overwhelming are the contradictory and confusing descriptions of the alleged
offenses, appellant posits, that this case implicates the same concerns raised
in those cases in which the State is required to make an election when evidence
of multiple incidents of sexual abuse are presented.  Cf. Dixon v. State,
201 S.W.3d 731, 733 (Tex. Crim. App. 2006) (citing Phillips v. State,
130 S.W.3d 343 (Tex. App.CHouston [14th Dist.] 2004), aff=d, 193 S.W.3d 904
(Tex. Crim. App. 2006)) (noting, among other things, that election rule
minimizes risk that jury might determine guilt based on totality of crimes
rather than proof of one or more crimes beyond a reasonable doubt, and it
ensures unanimous verdicts).  Appellant also contends that allowing cause
number 1033314 to go to the jury when at trial D.A. affirmatively denied that
appellant put his Aprivate@ on her Afront private@ was so confusing
to the jury Athat it completely undermines confidence in the jury
verdict on both counts.@

However, we disagree that the evidence is so contradictory
and confusing that it cannot support the jury=s verdicts. 
First, concerning the allegation of oral contact with D.A.=s sexual organ,
D.A. testified that appellant licked her Aprivate part,@ which she
identified on an anatomically correct doll as the female sexual organ. 
Further, shortly after the sexual assault, she repeatedly and consistently told
a number of people that appellant licked her vagina.  Less than twenty-four
hours after the assault, D.A. told appellant=s sister, Devina
Lane, that appellant licked her Aprivate area,@ or sexual organ. 
In response, Devina took D.A. to the hospital, where D.A. told  Officer Joseph
that appellant licked her vagina.  Jane also made similar statements to a
social worker and a nurse examiner.  Appellant points to no testimony
contradicting these statements.  








Second, concerning the allegation that appellant caused his
sexual organ to contact her sexual organ, appellant is correct that D.A.
testified that appellant Astuck his penis in [her] behind,@ but denied that
he placed his penis on her Afront private.@  Appellant
contends that this denial, coupled with Devina Lane=s testimony that
D.A. told her appellant Atried to@ put his private
area on her private area, amounts to insufficient evidence to support the jury=s verdict in cause
number 1033314.  However, when D.A. told Devina that appellant Atried to put his
private area on her private area,@ she also told
Devina that it hurt.  Devina further testified that when D.A. told her this,
she understood D.A. to mean that there was penetration of her vagina.  D.A.
also told a number of other people that appellant did cause his sexual organ to
contact her sexual organ.  Officer Joseph testified that appellant placed his
penis inside her vagina.  Further, the social worker=s report reflects
that D.A. said that appellant Araped@ her and put his Amiddle/private in
her private.@  Similarly, the nurse examiner at the hospital
reported that D.A. said that appellant Araped@ her when he put
his Amiddle part@ on her. 

Moreover, there was evidence that, at eight years old, D.A.
may have been confused about whether appellant contacted her anus or her
vagina.  Detective James Fitzgerald, the lead detective in this case, testified
that he had been in the child abuse division for thirteen years and had
investigated more than 2,000 child sexual assault cases.  He explained that
eight-year-old sexual assault victims frequently are unable to differentiate
between a penetration of their anus and a penetration of their vagina due to
their lack of sophistication and experience.  Reviewing courts similarly
recognize that child victims cannot be expected to testify with the same
clarity and ability as mature and capable adults, and so give wide latitude to
testimony given by child victims of sexual assault.  See Newby v. State,
252 S.W.3d 431, 436B37 (Tex. App.CHouston [14th
Dist.] 2008, pet. struck) (citing Villalon v. State, 791 SW. 2d 130, 134
(Tex. Crim. App. 1990)). 

Further, the medical evidence was consistent with vaginal,
rather than anal, penetration.  Dr. Ward=s examination of
D.A. revealed a transection, or split, in her hymen, as well as an area of
redness on her vagina.  Dr. Ward explained that these conditions were
consistent with the abuse D.A. described to the social worker and the nurse
examiner.  Dr. Ward also testified he did not recall D.A. alleging that
appellant contacted her anus, and his examination of her anus revealed no
evidence of trauma.  








A decision is not manifestly unjust merely because the jury
resolved conflicting views of the evidence in favor of the State.  Cain,
958 S.W.2d at 410.  Contradictory testimony is a factor for the jury to
consider, but merely because the testimony is contradictory does not mean that
the evidence is factually insufficient to support appellant=s convictions. 
Unless the record clearly reveals a different result is appropriate, we must
defer to the jury=s determinations concerning what weight to
give contradictory testimonial evidence because its resolution often turns on the
jury=s evaluation of
the credibility and demeanor of the witnesses.  See Johnson, 23 S.W.3d
at 8; Cain, 958 S.W.2d at 408B09.  Although we
may disagree with the jury=s conclusions, we may do so only Ato a very limited
degree.@  See Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Thus, although D.A.=s testimony
concerning penetration was inconsistent, the jury had before it evidence that,
shortly after the assault, D.A. consistently outcried to several adults that
appellant had contacted her vagina with his mouth and penis, and medical
evidence corroborated D.A.=s account.  Accordingly, we disagree with
appellant that the evidence presented to the jury was so contradictory
concerning her description of the alleged offenses that the evidence is too
weak to support the jury=s verdicts. 

2.       The
allegedly Afailed investigation@ does not render
the jury=s verdicts manifestly unjust.

Next, appellant contends that the jury=s verdicts were
manifestly unjust because Detective Fitzgerald, the lead investigator in the
case, failed to recover any physical evidence from the scene of the assault,
did not visit the scene, did not interview witnesses who were present, and did
not consult with any medical personnel.  Appellant also contends that the State
did not call him to testify, but rather he was called by the defense as an
adverse witness, because of his failure to properly investigate D.A.=s allegations.  








Initially, the State responds that although the detective
may not have undertaken every investigative effort appellant deems necessary,
he did conduct a considerable and adequate amount of productive investigation
and therefore his investigation cannot be faulted.  His testimony reflects
that, among other things, he called D.A.=s mother the same
day he received the file, set up an interview for D.A. and her mother at the
Children=s Assessment
Center, subpoenaed and obtained D.A.=s medical records
from Texas Children=s Hospital, obtained Devina Lane=s written
statement, spoke to appellant=s mother, and reviewed Child Protective
Services records.

However, even assuming that Detective Fitzgerald=s investigation
was inadequate, his deficient performance would not render the evidence
insufficient to support appellant=s convictions. 
The lack of physical or forensic evidence is merely a factor for the jury to
consider in weighing the evidence.  See Lee v. State, 176 S.W.3d 452,
458 (Tex. App.CHouston [1st Dist.] 2004), aff=d, 206 S.W.3d 620
(Tex. 2006).  It is not needed to corroborate D.A.=s testimony of
sexual assault.  See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon
2005); see also Glockzin v. State, 220 S.W.3d 140, 148 (Tex. App.CWaco 2007, pet.
ref=d) (holding that
when victim testified to facts establishing aggravated sexual assault, lack of
physical or forensic evidence did not demonstrate factual insufficiency).  As
discussed above, the jury had before it sufficient evidence to convict
appellant of the two offenses alleged.  We therefore reject appellant=s contention that
an inadequate police investigation renders the evidence factually insufficient
to support the jury=s verdicts.

3.       The
evidence from the earlier mistrial does not render the jury=s verdicts
manifestly unjust.








Next, appellant argues that the evidence is factually
insufficient, in part, because a mistrial was declared in his previous trial
after the jury was unable to reach a verdict.  Appellant notes that, in the
previous trial, Detective Fitzgerald was called by the State, and additional
witnesses were called by both the State and the defense.  The defense also
called appellant, and recites some of appellant=s testimony from
the first trial.  Appellant makes no argument in this section of his brief and
cites no authorities to support his assertion that the earlier mistrial is in
any way relevant to our factual sufficiency review of the verdicts of the jury
in the second trial.  Our review of the record for factual sufficiency of the
evidence is based on the evidence actually presented to the jury.  Evidence
from a previous trial, which the second jury did not hear, cannot constitute
grounds for finding this jury=s verdicts factually insufficient. 
Appellant=s contention is without merit.

4.       Devina
Lane=s testimony that Dr. Ward said D.A.=s injuries were too
old to have occurred as D.A. described does not render the jury=s verdicts
manifestly unjust.

Next, appellant contends that the evidence is factually
insufficient because Devina Lane testified that Dr. Ward told her at the
hospital that D.A.=s injuries were too old to have resulted
from a sexual assault committed the previous night.  However, Dr. Ward
testified that he did not recall making such a statement to Devina, and he
indicated that he would not have made such a statement, because it would have
been inconsistent with his findings.  He also testified that D.A.=s injuries were in
fact consistent with her description of a recent sexual assault.  The jury
could have believed the testimony of Dr. Ward and disbelieved the testimony of
Devina, appellant=s sister.  In a factual sufficiency
review, we must defer to the jury=s determination
concerning what weight to give conflicting testimony because resolution of
facts often turns on an evaluation of credibility and demeanor.  See Johnson,
23 S.W.3d at 8; Cain, 958 S.W.2d at 408B09.  On this
record, we decline to substitute our judgment for that of the jury based on
Devina=s testimony
concerning Dr. Ward=s statement to her.

5.       The
evidence that other people were in the apartment at the time of the alleged
offenses does not render the jury=s verdicts
manifestly unjust.








Finally, appellant contends that D.A.=s version of
events is suspect because there were a number of other people nearby when D.A.
was assaulted, and yet none of them heard anything.  However, although other
people were in the apartment at the time of the offense and some of them were
in the next room, D.A. testified that she and appellant were alone in the room
where the assault occurred and she did not hear anyone else wake up during that
time.  She also testified that she and appellant were under some covers during
the entire assault.  That appellant managed to assault D.A. under these
circumstances does not render D.A.=s testimony
suspect.  The jury had all of these facts before it, and resolved them against
appellant.  Again, a decision is not manifestly unjust merely because the jury
resolved conflicting views of the evidence in favor of the State.  Cain,
958 S.W.2d at 410. 

 

 

Conclusion

Our review of the record as a whole, with consideration
given to all of the evidence both for and against the jury=s findings, has
not caused us to conclude that the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or that the verdict is against the great
weight and preponderance of the evidence.  See Watson, 204 S.W.3d
at 414B15.  Therefore, we
hold that the evidence is factually sufficient to support the jury=s verdicts.  We
overrule appellant=s sole issue.

 

 

 

/s/      Jeffrey V. Brown

Justice

 

 

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  D.A. testified that Niki remained at the apartment,
but a sixteen-year-old who also testified at the trial stated that Niki left
with her boyfriend and appellant, leaving her in charge of the children.





[2]  Records admitted into evidence reflect that D.A.
told the social worker that appellant Araped@ her, and that he put his Amiddle/private in her private.@  D.A. also stated that appellant Alicked her private middle part.@  The nurse=s
report reflected that D.A. told the nurse that appellant Araped@ her when he Aput his hands and his middle part@ on her and licked her Aprivate.@





[3]  According to appellant, one could draw from Devina
Lane=s description of what D.A. alleged as (1) contact of
private area to private area; (2) attempted contact of private area to private area;
(3) contact of appellant=s mouth to D.A.=s
chest; (4) contact of appellant=s mouth to D.A.=s private area; and (5) penetration of D.A.=s sex organ with appellant=s sex organ.  Appellant also contends that D.A.
testified that (1) he put his penis in her behind; (2) he did not put his
private anywhere else; (3) he licked her chest and private; and (4) he stuck
his finger in her front side.  We disagree that the testimony of these
witnesses was as contradictory and confusing as appellant contends.  Further,
as discussed in greater detail below, much of the testimony appellant
identifies supports the jury=s verdicts.





[4]  Appellant contends D.A. was impeached on such issues
as whether or not appellant screamed at her, what time did the alleged offenses
occur, who decided she should lie down with her cousin, and whether appellant
made comments about her mother if she Atold.@  However, in response to many of counsel=s questions, D.A. testified that she did not remember
statements made earlier.  For example, she did not remember previously stating
that appellant put D.A. on her stomach when he put his Aprivate@ on
her Abottom,@
what time the alleged assault occurred, or the sequence of events.  In another
example appellant points to, D.A. first testified on direct examination that
appellant never told her not to tell what happened, but defense counsel pointed
out that she had previously stated that appellant told her that if she told
anyone, he would Ado something@ to
her mother.  In another example, D.A. testified she could not remember if
appellant screamed at her during the assault, but when shown her previous
testimony, she agreed that she was telling the truth when she previously stated
that appellant did scream at her and woke up her cousin.  The jury was free to
assess D.A.=s credibility on these issues and the weight of any
conflicting evidence.  See Johnson, 23 S.W.3d at 8; Cain, 958
S.W.2d at 408B09.